IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEFENDERS OF WILDLIFE**<br>1130 17th Street, NW<br>Washington, DC 20036,<br><br>**CENTER FOR BIOLOGICAL DIVERSITY**<br>P.O. Box 710<br>Tucson, AZ 85702-0710,<br><br>       *Plaintiffs*,<br><br>v.<br><br><br><br>**SALLY JEWELL,**<br>Secretary, U.S. Department of the Interior<br>1849 C Street NW<br>Washington, DC 20240,<br><br>**DANIEL M. ASHE,**<br>Director, U.S. Fish and Wildlife Service<br>1849 C Street NW<br>Washington, DC 20240.<br><br>       *Defendants*. | Case No. 1:13-cv-00919-RC |

### DECLARATION OF BENJAMIN SHEPPERD PERMIAN BASIN PETROLEUM ASSOCIATION IN SUPPORT OF MOTION TO INTERVENE

1.   I make this declaration in support of the motion filed by the Permian Basin Petroleum Association ("PBPA") and other associations to intervene in the above captioned case.  In this action, the Defenders of Wildlife ("DOW") and Center for Biological Diversity ("CBD") (collectively, "Plaintiffs") have asked this Court to set aside and remand the U.S. Fish and Wildlife's ("FWS" or "the Service") final rule withdrawing the proposed rule to list the dunes

1

sagebrush lizard ("DSL") under the Endangered Species Act ("ESA").  *See* Plaintiff's Complaint for Declaratory and Injunctive Relief; *see also* final rule at 78 Fed. Reg. 36,872 (June 19, 2012).

2. The purpose of this declaration is to provide my testimony on PBPA and its members' interests in this action, the impacts on PBPA's members should Plaintiffs be successful in setting aside the Service's duly promulgated final rule, and the lengthy and substantial engagement by PBPA and its members in the Service's listing activity and the conservation efforts at issue in this action.

### I.    Qualifications

3. I am currently President at PBPA and have worked at PBPA for 7 years.  In this role, I advocate on behalf of the oil and gas industry in the Permian Basin on a wide range of issues, including issues related to the ESA.

4. I have direct and specific knowledge of PBPA members that operate in or near DSL habitat, and I have direct knowledge of PBPA members' concerns about the impact listing the DSL would have on their ability to conduct operations in DSL habitat.

5. I am aware of, and participated in, PBPA's advocacy efforts on the Service's proposed listing, as well as the conservation efforts that PBPA members participated in and which informed, in part, the Service's ultimate decision to withdraw its listing proposal.

### II    PBPA

6. PBPA is a state trade association representing more than 1000 member companies involved in all aspects of the oil and gas industry in the Permian Basin.  PBPA's membership

consists of some of the industry's largest operators as well as small businesses that support oil and gas development, and benefit from a thriving energy industry in the Permian Basin.  These small businesses include geologists, retailers, bankers, doctors, and transport companies.  PBPA is dedicated to promoting the safe and responsible development of oil and gas resources in the Permian Basin through advocacy, collaboration, and education. Such advocacy often consists of providing comment and testimony in rulemaking dockets and petitioning or intervening in legal actions such as the present action.

7. Nearly all PBPA member companies' operations are in or adjacent to the areas that the Service identified as DSL habitat.

### III. PBPA and its Members' Interest in the DSL and DSL Habitat

8. DSL habitat largely overlies the Permian Basin, which covers more than 50 counties in western Texas and the southeastern region of New Mexico.  According to FWS, over 50% of Texas oil production occurs in Districts 8 and 8a in the Permian Basin, which overlies DSL habitat.  In New Mexico, 70% of DSL habitat has been leased by private entities, BLM, or the New Mexico State Land Office for oil and gas exploration and production.  PBPA members operate in all these areas.

9. The Permian Basin is over 250 miles wide and 300 miles long and contains a number of producing formations such as the Yates, San Andres, Clear Fork, Spraberry, Wolfcamp, Yeso, Bone Spring, Avalon, Canyon, Morrow, Devonian, and Ellenberger formations.  PBPA members operate in all these formations.

10.     The Permian Basin contains the largest inland oil and gas reservoir in the lower 48 states. It produces 14% of the nation's crude oil (2/3 of the oil produced in Texas). Only Alaska has more oil reserves (21%).

11.     In 2012, total gross production form the Permian Basin amounted to 618.8 million barrels of oil equivalent. PBPA members produced the majority of these resources.

12.     According to the Texas Railroad Commission, the Permian Basin supports approximately 47,000 jobs in the oil and gas industry. Additionally, because oil and gas development requires a large amount of services, materials, equipment, and infrastructure, the employment impacts of energy activities in the Permian Basin are likely far greater and far more widespread than those estimated by the Texas Railroad Commission. PBPA members likely created the majority of these jobs.

13.     Because of the proximity of the DSL to their operations in and around the Permian Basin, PBPA members have made great efforts to protect the DSL, preserve its habitat, and conducted research with the aim of protecting the species and preserving industry's ability to safely and responsibly develop oil and gas resources in the region.

14.     In particular, in 2005, PBPA and several of its members participated in the development of the strategy document entitled Collaborative Conservation Strategies for the Lesser Prairie Chicken and the Sand Dune Lizard (Dunes Sagebrush Lizard) in New Mexico. This document provided the framework for future conservation efforts.

15.     Among those future conservation efforts were the Candidate Conservation Agreement ("CCA") and Candidate Conservation Agreement with Assurances ("CCAA") for the Lesser

Prairie Chicken and the Sand Dune Lizard (Dunes Sagebrush Lizard) in New Mexico and the Texas Conservation Plan (collectively "Conservation Programs"). PBPA and many of its members devoted considerable time and resources into developing these conservation programs.

16. PBPA's goal related to the DSL in participating in, and advocating for the development of, these programs was to protect the DSL, avoid listing the DSL under the ESA, and to secure protections for members if listing occurred.

17. The Conservation Programs provide meaningful protections. Under these programs, PBPA members and others voluntary take on conservation measures, subject their development plans and conservation measures to regulatory scrutiny, and incur significant fees for surface disturbing activities.

18. As of December 2010, when FWS proposed to list the DSL, only about 50,000 acres of DSL habitat in New Mexico were enrolled in the Conservation Programs. As of May 2012, just prior to when the FWS withdrew its proposal to list the DSL under the ESA, 29 companies (many of which are PBPA members) enrolled over 274,000 acres of DSL habitat. When combined with 373,335 acres enrolled by ranchers and the substantial enrollment of state land by the New Mexico State Land Office, 95% of DSL habitat in New Mexico became protected under a conservation program.

19. The Texas Conservation Plan was signed on February 17, 2012 - after FWS's proposed listing was published. As of May 2012, the Texas Conservation Plan included 227,235 acres, of which 138,640 are within DSL habitat. This tremendous coverage encompasses 71 percent of DSL habitat in Texas.

20.     If the Service's decision to withdraw the proposed listing were set aside, these voluntary efforts advocated by PBPA, and enrolled in by PBPA members, would be in vain.

21.     Listing the DSL as endangered under the ESA would have adversely impacted PBPA members operating in the Permian Basin because such a listing could constrain access to important development sites, lead to increased permitting requirements and delays, and significantly increase the cost of operating in the Permian Basin.

22.     If the DSL were listed as endangered under the ESA, PBPA members could be prohibited from operating in the Permian Basin because normal industry operations could cause incidental takes of DSL.  To avoid violating the ESA, PBPA members would need to apply for, and obtain, incidental take permits in order to conduct even routine operations.  Even when such permits are granted, they often lead to delay, generate administrative expenses relative to requesting the permits, and often contain operational restrictions or costly mitigation measures.  When such incidental take permits are not granted, PBPA's members may be effectively shut out from leased or owned parcels entirely.

23.     If the DSL were listed as endangered, as Plaintiffs have repeatedly demanded, federal actions that could impact the DSL, such as leasing actions on federal land, would require time-consuming consultation under Section 7 of the ESA and could cut off access entirely to parcels of federal lands in DSL habitat.

24.     Because of the significant adverse impacts on PBPA members that could result if the DSL were listed as endangered under the ESA, PBPA and its members meaningfully participated at each milestone of the listing process and developed and undertook significant voluntary efforts to avert the need for listing under the ESA.  PBPA submitted several sets of comments in

response to the Service's listing proposal as did several of PBPA's members and their employees.

I, Benjamin Shepperd, certify under penalty of perjury that the foregoing is true and correct. Executed on September 19, 2013.

*/s/ Ben Shepperd*